# In the United States Court of Federal Claims

No. 17-1581C
Filed April 6, 2018
NOT FOR PUBLICATION

FILED
APR - 6 2018
U.S. COURT OF
FEDERAL CLAIMS

|   |   |
|---|---|
| GRANVILLE SCRUGGS, II, ) | |
| ) | |
| Plaintiff, ) | *Pro Se*; RCFC 12(b)(1); Subject-Matter Jurisdiction; Summary Judgment; RCFC 56. |
| ) | |
| v. ) | |
| ) | |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

*Granville Scruggs, II*, Olive Branch, MS, plaintiff *pro se*.

*Kelly A. Krystyniak*, Trial Attorney, *Tara K. Hogan*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Chad A. Readler*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

### I.  INTRODUCTION

Plaintiff *pro se*, Granville Scruggs, II, brings this action seeking to recover monetary damages from the United States in connection with certain mutilated currency claims that he submitted to the United States Department of the Treasury, Bureau of Engraving and Printing (the "BEP"). *See generally* Am. Compl. As relief, plaintiff seeks to recover $960,474.00 from the government. Compl. at 4; *see also* Def. Mot. at 2.

The government has moved to dismiss the complaint for lack of subject-matter jurisdiction upon the grounds that the Court does not possess subject-matter jurisdiction to consider plaintiff's takings, breach of contract, criminal law, tort, and civil rights claims, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Def. Mot. Alternatively, the government moves for summary judgment in its

7016 3010 0000 4308 4560

favor, pursuant to RCFC 56, upon the ground that the BEP properly denied plaintiff's mutilated currency claims. *Id.*

Plaintiff has also moved to proceed in this matter *in forma pauperis*. *See generally* Pl. IFP Mot. For the reasons set forth below, the Court: (1) **GRANTS** the government's motion to dismiss, or, in the alternative, for summary judgment; (2) **GRANTS** plaintiff's motion to proceed *in forma pauperis*; and (3) **DISMISSES** plaintiff's complaint.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual And Procedural Background

Plaintiff *pro se*, Granville Scruggs, II, filed this action on October 18, 2017. *See generally* Compl. Plaintiff's complaint and amended complaint are difficult to follow. But, it appears that plaintiff primarily alleges that United States Department of the Treasury, Bureau of Engraving and Printing improperly denied certain mutilated currency claims that he submitted to the BEP in 2014. *Id.* at 4; Am. Compl. at 1; *see also* Def. Mot. at 2. In the amended complaint, plaintiff alleges that he submitted lawfully held legal tender to the BEP, consistent with the BEP's mutilated currency regulations. Am. Compl. at 2, 4. And so, plaintiff contends that the BEP violated the agency's mutilated currency regulations by denying his mutilated currency claims. *Id.*

Plaintiff also appears to allege that he has entered into a valid contract with the government to recover certain monetary damages that he seeks in this case. *Id.* at 1. In addition, plaintiff appears to allege that the government engaged in a wrongful criminal prosecution involving plaintiff. *Id.* at 2-3 (alleging that the government "attempted a grand jury indictment in bad faith against [him]"). As relief, plaintiff seeks to recover $960,474.00 in monetary damages from the government. Compl. at 4; *see also* Def. Mot. at 2.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from plaintiff's complaint ("Compl."); plaintiff's amended complaint ("Am. Compl."); and the government's motion to dismiss ("Def. Mot"). Unless otherwise stated, the facts recited herein are undisputed. Because of plaintiff's *pro se* status, the Court considers both the complaint and the amended complaint to determine the nature of plaintiff's claims.

### 1. BEP's Mutilated Currency Regulations

As background, the BEP redeems mutilated United States currency as a free service to the public. *See* BUREAU OF ENGRAVING AND PRINTING SERVICES, *Redeem Mutilated Currency*, https://bep.gov/services/currencyredemption.html (last visited Mar. 23, 2018). The lawful holders of mutilated currency may redeem their currency at full value when the currency has been damaged to the extent that its condition is such that the currency's value is questionable. *Id.* Under such circumstances, mutilated currency must be sent to the BEP for examination before any redemption of the currency is made. *Id.*

Specifically relevant to this dispute, the BEP has promulgated regulations that govern the process for redeeming mutilated currency. *See generally* 31 C.F.R. § 100.2-.19. These regulations define "mutilated currency" as follows:

> Mutilated currency is currency which has been damaged to the extent that:
>
> > (i) One-half or less of the original note remains; or
> >
> > (ii) Its condition is such that its value is questionable and the currency must be forwarded to the Department of the Treasury for the examination by trained experts before any redemption is made.

31 C.F.R. § 100.5(b)(i)-(ii). Under the BEP's mutilated currency regulations, "[l]awfully held mutilated paper currency of the United States may be submitted for examination in accord with the provisions [of these regulations]." *Id.* § 100.5(a). And so, mutilated currency may be redeemed at face amount if sufficient remnants of any relevant security feature and clearly more than one-half of the original note remains. *Id.*

The BEP's mutilated currency regulations also describe the procedure for redeeming mutilated currency. The regulations provide that:

> (a) Lawful holders of mutilated currency may receive a redemption at full value when:
>
> > (1) Clearly more than 50% of a note identifiable as United States currency is present along with sufficient remnants of any relevant security feature; or

> (2) Fifty percent or less of a note identifiable as United States currency is present and the method of mutilation and supporting evidence demonstrate to the satisfaction of the Treasury that the missing portions have been totally destroyed.

*Id.* § 100.7(a). But, the regulations provide that:

> (b) No redemption will be made when:
>
> > (1) A submission, or any portion thereof, demonstrates a pattern of intentional mutilation or an attempt to defraud the United States. In such instances, the entire submission will be destroyed or retained as evidence.
> >
> > (2) A submission appears to be part of, or intended to further, any criminal scheme. In such instances, the entire submission will be destroyed or retained as evidence.
> >
> > (3) A submission contains a material misrepresentation of facts.
> >
> > (4) Fragments and remnants presented are not identifiable as United States currency; or
> >
> > (5) Fragments and remnants presented which represent 50% or less of a note are identifiable as United States currency but the method of destruction and supporting evidence do not satisfy the Treasury that the missing portion has been totally destroyed.

*Id.* at § 100.7(b).

> Lastly these regulations provide that:
>
> All cases will be handled under proper procedures to safeguard the funds and interests of the submitter of lawfully held mutilated currency. In some cases, the amount redeemed will be less than the amount estimated by the submitter. In other cases, the amount redeemed may be greater. The amount redeemed will be determined by an examination made by trained mutilated currency examiners and governed by the above criteria.

*Id.* at § 100.7(d). And so, the Director of the BEP has the final authority with respect to the redemptions of mutilated currency submissions. *Id.* at § 100.7(e).

4

### 2. Plaintiff's Mutilated Currency Claims

In 2014, plaintiff submitted several mutilated currency claims to the BEP. Def. Mot. at A23-24, A29. After the BEP became suspicious of plaintiff's claims, the BEP's Mutilated Currency Division sent a complaint to the Department of the Treasury's Office of the Inspector General (the "OIG") alleging that plaintiff had purchased bags of shredded currency from a BEP store and then submitted these bags of shredded currency to the BEP with redemption claims. *Id.* at A23.

On September 9, 2015, the OIG issued a final report finding that the Mutilated Currency Division's complaint had been substantiated and that plaintiff's mutilated currency claims were improper. *Id.* at A23. Specifically, the OIG found that, on December 18, 2013, "a subject using the name Douglas Hornsby and address 12860 Pine Crest Drive, Olive Branch, MS 38654, placed an order for two, five pound bags of shredded U.S. currency from The BEP Store online." *Id.* The OIG also found that "[a] second, identical order was placed on December 27, 2013." *Id.*

In addition, the OIG found that, "on February 6, 2014, the BEP received a [mutilated currency claim] for four bags of shredded currency from [plaintiff, using the 12860 Pine Crest Drive address]." *Id.* The OIG also found that, on September 10, 2014, the BEP received an email that appeared to be from plaintiff stating that a friend of plaintiff had purchased the four bags of shredded currency for plaintiff, and claiming a mitigated currency value of approximately $52,800.00. *Id.*

After the BEP denied plaintiff's first mutilated currency claim on May 7, 2014, the OIG found that plaintiff "submitted additional shredded currency claims" to BEP in the respective amounts of $250,000.00—in September 2014—and $704,666.00—in December, 2014. *Id.* at A23-A24. The BEP denied both of these claims. *Id.* Thereafter, the OIG issued a cease and desist warning to plaintiff and advised plaintiff that his conduct in submitting these mutilated currency claims violated of both criminal and civil law.[2] *Id.* at A24.

---

[2] On July 20, 2016, plaintiff testified about fraud claims before a federal grand jury sitting in Oxford, Mississippi. Compl. at 1, App. at 6; Am. Compl. at 2. Plaintiff was not criminally indicted in connection with those proceedings. Am. Compl. at 2; *see also* Def. Mot. at 4.

5

### 3. Plaintiff's Prior Mutilated Currency Litigation

Prior to commencing this action, plaintiff filed several other cases involving his mutilated currency claims.

On November 10, 2015, plaintiff commenced an action in the Superior Court of the District of Columbia, which was later removed to the United States District Court for the District of Columbia, alleging that he submitted mutilated currency to the BEP which had not been properly redeemed. Am. Compl. Ex. 1, at 3 (docket entry no. 8-1); *see also* Def. Mot. at 3. On August 1, 2016, the district court dismissed this case upon jurisdictional grounds. Am. Compl. Ex. 1, at 6-9 (docket entry no. 8-1).

On February 17, 2016, plaintiff commenced an action in this Court seeking to recover $960,474.00 from the government as redemption for 54 pounds of mutilated currency. *See generally Scruggs v. United States*, Case No. 16-0235C, 2016 WL 3419221 (Fed. Cl. June 16, 2016). On June 16, 2016, the Court dismissed that case upon jurisdictional grounds, pursuant to RCFC 12(b)(1). *Id.* at *4-5.

In addition, on October 26, 2016, plaintiff filed a civil rights action before the United States District Court for the Northern District of Mississippi alleging that his constitutional rights had been violated by the dismissal of his litigation before the United States Court of Federal Claims. Pl. Compl. at 5, *Scruggs v. Reyes*, Case No. 3:16-cv-00245-SA-RP, (N.D. Miss. July 3, 2017) (docket entry no. 1); *see also* Def. Mot. at 4. Plaintiff voluntarily dismissed the complaint in that matter on July 3, 2017. *See generally* Pl. Notice of Dismissal, *Scruggs v. Reyes*, Case No. 3:16-cv-00245-SA-RP (docket entry no. 20); *see also* Def. Mot. at 4.

Lastly, on October 13, 2017, plaintiff filed another case in this Court asserting a takings claim based upon the denial of his mutilated currency claims. *See* Pl. Compl., *Scruggs v. United States*, Case No. 17-00740C-EGB (Fed. Cl. October 13, 2017) (docket entry no. 1); *see also* Def. Mot. at 4. On October 10, 2017, plaintiff voluntarily dismissed that case. Pl. Notice of Dismissal, *Scruggs v. United States*, Case No. 17-0740-EGB (docket entry no. 21).

### B.   Procedural History

October 18, 2017, plaintiff filed the complaint and a motion to proceed in this matter *in forma pauperis*. *See generally* Compl.; Pl. IFP Mot. On November 6, 2017, plaintiff filed an amended complaint. *See generally* Am. Compl.

On December 18, 2017, the government filed a motion to dismiss the amended complaint, or alternatively, for summary judgment, pursuant to RCFC 12(b)(1) and 56. *See generally* Def. Mot. On January 10, 2018, plaintiff filed a response and opposition to the government's motion to dismiss, or, alternatively, for summary judgment. *See generally* Pl. Resp. On January 18, 2018, the government filed a reply in support of its motion to dismiss, or alternatively, for summary judgment. *See generally* Def. Reply.

The government's motion to dismiss, or alternatively, for summary judgment having been fully briefed, the Court resolves this pending motion.

## III.   LEGAL STANDARDS

### A.   *Pro Se* Litigants

Plaintiff is proceeding in this matter *pro se*. The Court recognizes that parties proceeding *pro se* are granted greater leeway than litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers"). Nonetheless, "[w]hile a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." *Demes v. United States*, 52 Fed. Cl. 365, 369 (2002). And so, the Court may excuse ambiguities in plaintiff's complaint, but the Court does not excuse the complaint's failures. *See Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

In addition, this Court has long recognized that "the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007). For this reason, a *pro se* plaintiff—like any other plaintiff—must establish the Court's jurisdiction to consider his claim by a preponderance of the evidence. *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010).

**B.  Jurisdiction And RCFC 12(b)(1)**

When deciding a motion to dismiss for lack of subject-matter jurisdiction, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); *see also* RCFC 12(b)(1). Plaintiff bears the burden of establishing subject-matter jurisdiction, and must do so by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). And so, should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006); *see also* RCFC 12(h)(3).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Specifically, the Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act is, however, "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976). And so, to come within the jurisdictional reach and waiver of the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States that creates the right to money damages. *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Martinez v. United States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003).

"[A] statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" *Fisher*, 402 F.3d at 1173 (brackets in original) (quoting *United States v.*

*Mitchell*, 463 U.S. 206, 217 (1983)). If the Court finds that the source of law alleged is not money-mandating, the Court must dismiss the case for lack of subject-matter jurisdiction. *Id.*; RCFC 12(b)(1).

### C. RCFC 56

Pursuant to RCFC 56, a party is entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Biery v. United States*, 753 F.3d 1279, 1286 (Fed. Cir. 2014). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A fact is "material" if it could "affect the outcome of the suit under the governing law." *Id.*

The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). And so, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

In making a summary judgment determination, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004); *Agosto v. INS*, 436 U.S. 748, 756 (1978) ("[A trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented . . . ."). The Court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . . ." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587.

The above standard applies when the Court considers cross-motions for summary judgment. *Principal Life Ins. Co. & Subsidiaries v. United States*, 116 Fed. Cl. 82, 89 (2014); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010). And so, when both parties move for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### D. Contract Claims Against The United States

Under the Tucker Act, the Court possesses subject-matter jurisdiction to consider express or implied-in-fact contract claims against the United States. *See Aboo v. United States*, 86 Fed. Cl. 618, 626-27 (2009). But, plaintiff bears the burden of proving the existence of a contract with the United States and he must demonstrate that there is "something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights." *D & N Bank v. United States*, 331 F.3d 1374, 1376 (Fed. Cir. 2003).

To pursue a breach of contract claim against the United States under the Tucker Act, plaintiff must have privity of contract with the United States. *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1263 (Fed. Cir. 2005) (citations omitted) ("[T]he 'government consents to be sued only by those with whom it has privity of contract.'"). Plaintiff must also support his contract claim with well-pleaded allegations going to each element of a contract. *See Crewzers Fire Crew Transp. Inc. v. United States*, 741 F.3d 1380, 1382 (Fed. Cir. 2014) (holding that to invoke the jurisdiction of this Court under the Tucker Act, a plaintiff must present a well-pleaded allegation that its claims arose out of a valid contract with the United States); *see also* RCFC 9(k) ("In pleading a claim founded on a contract or treaty, a party must identify the substantive provisions of the contract or treaty on which the party relies."); *Gonzalez-McCaulley Inv. Grp., Inc. v. United States*, 93 Fed. Cl. 710, 715 (2010).

The requirements for establishing a contract with the United States are identical for express and implied-in-fact contracts. *See Night Vision Corp. v. United States*, 469 F.3d 1369, 1375 (Fed. Cir. 2006); *Huntington Promotional & Supply, LLC v. United States*, 114 Fed. Cl. 760, 767 (2014) ("The elements are the same for an express or implied-in-fact contract. . . ."). Specifically, a plaintiff must show: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon. *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012); *see also Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). A government official's authority to bind the United States must be express or implied. *Roy v. United States*, 38 Fed. Cl. 184, 188-89, *dismissed*, 124 F.3d 224 (Fed. Cir. 1997). And so, "the [g]overnment, unlike private parties, cannot be bound by the apparent authority of its agents." *Id.* at 187.

In this regard, a government official possesses express actual authority to bind the United States in contract "only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms." *Jumah v. United States*, 90 Fed. Cl. 603, 612 (2009), *aff'd*, 385 F. App'x 987 (Fed. Cir. 2010) (internal citations omitted); *see also City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) (citation omitted). On the other hand, a government official possesses implied actual authority to bind the United States in contract "when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees." *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2007) (citations omitted); *see also Aboo*, 86 Fed. Cl. at 627 (stating that implied actual authority "is restricted to situations where 'such authority is considered to be an integral part of the duties assigned to a [g]overnment employee.'") (quoting *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989)). In addition, when a government agent does not possess express or implied actual authority to bind the United States in contract, the government can still be bound by contract if the contract was ratified by an official with the necessary authority. *Janowsky v. United States*, 133 F.3d 888, 891-92 (Fed. Cir. 1998).[3]

### E. Fifth Amendment Takings Claims

The United States Court of Federal Claims has exclusive jurisdiction over Fifth Amendment takings claims in excess of $10,000. 28 U.S.C. § 1491(a); *see also Acceptance Ins. Cos. Inc. v. United States*, 503 F.3d 1328, 1336 (Fed. Cir. 2007). The Takings Clause of the Fifth Amendment guarantees just compensation whenever private property is "taken" for public use. U.S. CONST. amend. V. The purpose of the Fifth Amendment is to prevent the "[g]overnment from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Penn Central Transp. Co. v. City of New*

---

[3] Ratification may take place at the individual or institutional level. *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 653-54 (2007). Individual ratification occurs when a supervisor: (1) possesses the actual authority to contract; (2) fully knew the material facts surrounding the unauthorized action of his or her subordinate; and (3) knowingly confirmed, adopted, or acquiesced to the unauthorized action of the subordinate. *Id.* at 654 (quoting *Leonardo v. United States*, 63 Fed. Cl. 552, 560 (2005)). In contrast, institutional ratification occurs when the government "seeks and receives the benefits from an otherwise unauthorized contract." *Id.* at 654; *see also Janowsky v. United States*, 133 F.3d 888, 891-92 (Fed. Cir. 1998).

11

*York*, 438 U.S. 104, 123 (1978) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)); *see also Florida Rock Indus., Inc. v. United States*, 18 F.3d 1560, 1571 (Fed. Cir. 1994).

To have a cause of action for a Fifth Amendment takings, a plaintiff must point to a protectable property interest that is asserted to be the subject of the takings. *See Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (citation omitted) ("Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'"). Under the Takings Clause, "property" is defined as a "legally-recognized property interest such as one in real estate, personal property, or intellectual property." *Adams v. United States*, 391 F.3d 1212, 1224 (Fed. Cir. 2004) (clarifying that an ordinary obligation to pay money does not constitute "property" under the Takings Clause). Contract rights can be the subject of a takings action. *See, e.g., Lynch v. United States*, 292 U.S. 571, 579 (1934) ("Valid contracts are property, whether the obligor be a private individual, a municipality, a state or the United States.").

In addition, courts have traditionally divided the analysis of Fifth Amendment takings into two categories—regulatory takings and physical takings. In this regard, the United States Court of Appeals for the Federal Circuit has recognized that "[g]overnment action that does not directly appropriate or invade, physically destroy, or oust an owner from property but is overly burdensome may be a regulatory taking." *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1151 (Fed. Cir. 2014). In assessing whether a regulatory takings has occurred, courts generally employ the balancing test set forth in *Penn Central*, weighing the character of the government action, the economic impact of that action, and the reasonableness of the property owner's investment-backed expectations. *Penn Central Transp. Co.*, 438 U.S. at 124-25. "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922); *see also Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005) (holding a regulation is a takings if it is "so onerous that its effect is tantamount to a direct appropriation or ouster").

In contrast, physical or *per se* takings occur when the government's action amounts to a physical occupation or invasion of the property, including the functional equivalent of "a practical ouster of [the property owner's] possession." *Transportation Co. v. Chicago*, 99 U.S.

635, 642 (1879); *see also Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 428 (1982). When an owner has suffered a physical invasion of his property, the United States Supreme Court has noted that "no matter how minute the intrusion, and no matter how weighty the public purpose behind it, we have required compensation." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992). The distinction between a physical invasion and a governmental activity that merely impairs the use of that property turns on whether the intrusion is "so immediate and direct as to subtract from the owner's full enjoyment of the property and to limit his exploitation of it." *United States v. Causby*, 328 U.S. 256, 265, 66 S. Ct. 1062, 90 L. Ed. 1206 (1946).

## IV. LEGAL ANALYSIS

The government has moved to dismiss this matter for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1), upon the grounds that the Court may not consider plaintiff's constitutional, contract, tort, criminal law, and civil rights claims under the Tucker Act. *See* Def. Mot. at 6-8. Alternatively, the government moves for summary judgment in its favor pursuant to RCFC 56, upon the ground that the undisputed material facts in this case show that the BEP properly denied plaintiff's mutilated currency claims. *Id.* at 9-10.

In his response and opposition to the government's dispositive motion, plaintiff argues that the Court possesses subject-matter jurisdiction to consider his contract, civil rights, tort, criminal law, and takings claims, because these claims are based upon money-mandating sources of law. Pl. Resp. at 1-4. Plaintiff also argues that the government is not entitled to summary judgment in its favor with respect to his claim that the BEP improperly denied his mutilated currency claims, because plaintiff submitted legal tender to the BEP and there are material facts in dispute regarding his mutilated currency claims. *Id.* at 4-7.

For the reasons discussed below, a careful reading of the complaint and amended complaint makes clear that the Court does not possess subject-matter jurisdiction to consider any of plaintiffs' constitutional, contract, tort, criminal law, and civil rights claims. In addition, while the Court may consider plaintiff's claim that the BEP violated the agency's mutilated currency regulations by denying his mutilated currency claims, the undisputed material facts in this matter show that the BEP appropriately denied these claims. And so, the Court GRANTS

13

the government's motion to dismiss, or, in the alternative, for summary judgment and DISMISSES the complaint. RCFC 12(b)(1) and 56.

### A. The Court Does Not Possess Jurisdiction To Consider Plaintiff's Claims

As an initial matter, the Court must dismiss plaintiff's constitutional, contract, tort, criminal law, and civil rights claims for lack of subject-matter jurisdiction. RCFC 12(b)(1). It is well-established that, to come within the jurisdictional reach of the Tucker Act, plaintiff must identify and plead a money-mandating constitutional provision, statute or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States that creates the right to money damages. *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Martinez v. United States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003). "[A] statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" *Fisher*, 402 F.3d at 1173 (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)) (brackets in original). And so, if the Court finds that the sources of law relied upon by plaintiff to support his claims in this matter are not money-mandating, the Court must dismiss these claims for lack of subject-matter jurisdiction. *Id.*; RCFC 12(b)(1).

#### 1. The Court May Not Consider Plaintiff's Constitutional Claims

Even the most generous reading of the amended complaint shows that plaintiff fails to allege constitutional claims that may be pursued in this Court. In the amended complaint, plaintiff alleges that his case is "founded upon [the] 5th and 14th Amendment[s] of the U.S. Constitution." Am. Compl. at 1. But, the Federal Circuit has long recognized that this Court's jurisdiction under the Tucker Act does not extend to the review actions under either the Due Process Clause or Equal Protection Clause of the Fifth and Fourteenth Amendments. *See, e.g., Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir.1997) (holding that this Court has no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (holding that this Court has no jurisdiction arising from the due process and equal protection clauses). And so, plaintiff cannot rely upon these constitutional provisions to establish jurisdiction in this case.

To the extent that plaintiff alleges a Fifth Amendment takings claim, he also fails to allege a plausible claim. In the amended complaint, plaintiff cites the Takings Clause and asserts that he is entitled to "full reimbursement" of his mutilated currency claims. Am. Compl. at 2. And so, it appears that plaintiff alleges that he has a cognizable property interest in the BEP's obligation to redeem mutilated currency under the BEP's mutilated currency regulations. *Id.*

But, the Federal Circuit has held within the context of overtime civilian pay claims that the government's obligation to pay money pursuant to a federal statute is not a protected property interest that is cognizable under the Takings Clause. *Adams v. United States*, 391 F.3d 1212, 1219-20 (Fed. Cir. 2004) (holding no cognizable property right under the Takings Clause in underpaid overtime compensation under the Fair Labor Standards Act); *see also Lawrence v. United States*, 69 Fed. Cl. 550, 554 (2006) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (stating that the Tucker Act requires a plaintiff to identify a substantive right enforceable against the United States for money damages)).[4] Similarly here, plaintiff's takings claim is based upon the BEP's obligation to redeem mutilated currency under the agency's mutilated currency regulations. *Cf. Adams*, 391 F.3d at 1219-20. The Court does not find this to be a cognizable property interest. And so, plaintiff fails to state a plausible takings claim in this action and the Court must dismiss this claim. RCFC 12(b)(6).

### 2. The Court May Not Consider Plaintiff's Criminal Law, Tort, And Civil Rights Claims

Plaintiff's criminal law, tort, and civil rights claims are also jurisdictionally precluded. In the amended complaint, plaintiff alleges that the government "in bad faith, attempted a grand jury indictment against [him]." Am. Compl. at 2. But, it is well-established that this Court does not possess subject-matter jurisdiction to consider such criminal law matters. *Joshua v. United States*, 17 F.3d 378, 379 (1994) (finding that the Court does not have subject-matter jurisdiction over a plaintiff's criminal allegations against court officers acting in a "scheme [or] design").

---

[4] The Federal Circuit observed in *Adams* that the appellants in that case confused a property right cognizable under the Takings Clause with a due process right to payment of a monetary entitlement under a compensation statute. *Adams v. United States*, 391 F.3d 1212, 1220 (Fed. Cir. 2004). The Federal Circuit also noted that, generally, entitlements are considered to be government conferred benefits, safeguarded exclusively by procedural due process. *Id.* at n.4 (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

The Court also may not consider plaintiff's claims that the government defamed and slandered him and that he is the "victim of false allegations by the United States." Am. Compl. at 4. Plaintiff's claims plainly sound in tort and this Court does not possess subject-matter jurisdiction to consider tort claims. *See Keene Corporation v. United States*, 508 U.S. 200, 214 (1994).

Plaintiff's civil rights claim is equally problematic. In the amended complaint, plaintiff alleges he may bring this action pursuant to Section 1983 of the Civil Rights Act. Am. Compl. at 1. But, it is well-established that this Court may not entertain Section 1983 claims. *See, e.g., Jefferson v. United States*, 104 Fed. Cl. 81, 89 (2012). And so, the Court must also dismiss plaintiff's criminal law, tort, and civil rights claims. RCFC 12(b)(1).

### 3. The Court May Not Consider Plaintiff's Contract Claim

Lastly, to the extent that the amended complaint can be read to allege a breach of contract claim against the United States, this claim must also be dismissed. To pursue a breach of contract claim against the United States, plaintiff must support his contract claim with well-pleaded allegations going to each element of a contract. *See Crewzers Fire Crew Transp., Inc. v. United States*, 741 F.3d 1380, 1382 (Fed. Cir. 2014) (holding that to invoke the jurisdiction of this Court under the Tucker Act, a plaintiff must present a well-pleaded allegation that its claims arose out of a valid contract with the United States); *see also* RCFC 9(k) ("In pleading a claim founded on a contract or treaty, a party must identify the substantive provisions of the contract or treaty on which the party relies."); *Gonzalez-McCaulley Inv. Grp., Inc. v. United States*, 93 Fed. Cl. 710, 715 (2010). But a review of the amended complaint makes clear that plaintiff has not alleged any facts to show: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; or (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon, with respect to his contract claim. *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012); *see generally* Am. Compl. And so, the Court must dismiss plaintiff's breach of contract claim for lack of subject matter jurisdiction. RCFC 12(b)(1).

**B.     The BEP Properly Denied Plaintiff's Mutilated Currency Claims**

Plaintiff's claim that the BEP violated the agency's mutilated currency regulations by denying his mutilated currency claims is on much stronger jurisdictional footing. Am. Compl. at 1. In the amended complaint, plaintiff relies upon the BEP's mutilated currency regulations set forth in 31 C.F.R. Part 100 to bring this claim. Am. Compl. at 1-2; see *generally* 31 C.F.R. § 100.2-.19. In this regard, the BEP's mutilated currency regulations set forth in 31 C.F.R. § 100.5(a) provide that:

> Lawfully held mutilated paper currency of the United States may be submitted for examination in accord with the provisions in this subpart. Such currency may be redeemed at face amount if sufficient remnants of any relevant security feature and clearly more than one-half of the original note remains. Fragments of such mutilated currency which are not clearly more than one-half of the original whole note or are lacking sufficient remnants of any relevant security feature will be redeemed at face value only if the Director, Bureau of Engraving and Printing, Department of the Treasury, is satisfied that the missing portions have been totally destroyed. The Director's judgment shall be based on such evidence of total destruction as is necessary and shall be final. Any submission under this subpart shall be deemed an acceptance of all provisions contained herein.

31 C.F.R. § 100.5(a) (emphasis supplied). The United States Court of Claims has held that an allegation that the government failed to redeem properly mutilated currency states a claim that falls within the jurisdiction of this Court. *See Krigel v. United States*, 662 F.2d 741, 745 (Ct. Cl. 1981) (the obligation of the government to redeem mutilated currency is imposed by statute under 31 U.S.C. § 773a (1976) and defined by regulation under 31 C.F.R. § 100.5(a)). And so, the Court may consider plaintiff's claim.

While the Court may consider plaintiff's mutilated currency claim, the undisputed material facts in this matter, nonetheless, make clear that this claim lacks merit. As the government demonstrates in its dispositive motion, the undisputed material facts in this matter show that plaintiff repeatedly submitted shredded currency–rather than lawfully held legal tender–to the BEP for redemption in connection with his mutilated currency claims. Def. Mot. at 3, 10; A23-24, A29.

Specifically, the sworn declaration of the program manager for the BEP's Mutilated Currency Division, Tryst R. Hensell, Jr., states that the package containing plaintiff's first mutilated currency claim "contained shredded currency still in the original [BEP packaging]."

Def. Mot. at A2. A subsequent investigation of plaintiff's mutilated currency claims by the Department of the Treasury's Office of the Inspector General also found that this claim—and two other mutilated currency claims submitted by plaintiff—were improper. *Id.* at A23. In this regard, the OIG found that plaintiff "submitted additional shredded currency claims" to BEP in the amount of $250,000.00, in September 2014, and in the amount of $704,666.00, in December, 2014. *Id.* at A24.

The BEP's mutilated currency regulations make clear that "mutilated currency" must be "currency which has been damaged to the extent that either: (i) One-half or less of the original note remains; or (ii) Its condition is such that its value is questionable and the currency must be forwarded to the Department of the Treasury for the examination by trained experts before any redemption is made." 31 C.F.R. § 100.5(b)(i)-(ii). And so, these regulations clearly require that plaintiff submit lawfully held mutilated currency, rather than shredded currency, to the BEP for redemption. *Id.* § 100.5(a) (stating that only "[l]awfully held mutilated paper currency" may be submitted for examination).

Because the undisputed material facts in this case show that plaintiff did not do so here, the BEP appropriately denied plaintiff's mutilated currency claims.[5] And so, the Court grants the government's motion for summary judgment with respect to this final claim.

### C. The Court Grants Plaintiff's Motion To Proceed *In Forma Pauperis*

As a final matter, plaintiff has also filed a motion to proceed in this matter *in forma pauperis* and he seeks a waiver of the Court's filing fee. *See generally* Pl. IFP Mot. In his application to proceed *in forma pauperis*, plaintiff states that he is unable to pay the Court's filing fee due to his unemployment. *Id.* at 1-2. This Court may authorize commencement of a suit without prepayment of fees when a person submits an affidavit including a statement of all assets, a declaration that he or she is unable to pay the fees, and a statement of the nature of the action and a belief that he or she is entitled to redress. *See* 28 U.S.C. § 1915(a); *see also*

---

[5] Plaintiff argues without support that he submitted lawfully held legal tender to the BEP. Am. Compl. at 2; Pl. Resp. at 7 (arguing that a prior decision of this Court shows plaintiff submitted legal tender to the BEP). But, plaintiff does not dispute any of the aforementioned facts regarding the nature of his mutilated currency claims and the subsequent investigation conducted by the OIG. *See generally* Pl. Resp.

18

28 U.S.C. § 2503(d). Due to the Court's summary disposition of this case, and plaintiff's *pro se* status, the Court finds that plaintiff satisfies the statutory requirements to proceed *in forma pauperis*. And so, the Court **GRANTS** plaintiff's motion to proceed *in forma pauperis*.

## V. CONCLUSION

In sum, when read in the light most favorable to plaintiff, the complaint and amended complaint make clear that the Court does not possess subject-matter jurisdiction to consider plaintiff's constitutional, contract, tort, criminal law, and civil rights claims. The undisputed material facts in this matter also show that plaintiff's mutilated currency claim lacks merit, because plaintiff did not submit lawfully held mutilated currency to the BEP. Lastly, plaintiff has shown that he satisfies the statutory requirement to proceed in this matter *in forma pauperis*.

And so, for the foregoing reasons, the Court:

1. **GRANTS** the government's motion to dismiss, or, in the alternative, for summary judgment;

2. **GRANTS** plaintiff's motion to proceed *in forma pauperis; and*

3. **DISMISSES** the complaint.

The Clerk's Office is directed to **ENTER** judgment accordingly.
No costs.

**IT IS SO ORDERED.**

_____
LYDIA KAY GRIGGSBY
Judge